UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JIMMY HERNANDEZ, 05-B-2328,

        Petitioner,

    -v-                          09-CV-986(MAT)
                                         **DECISION AND ORDER**

JOHN B. LEMPKE,

        Respondent.
_____

## I.   Introduction

Pro se petitioner Jimmy Hernandez ("petitioner") seeks relief pursuant to 28 U.S.C. § 2254 alleging that his conviction of Arson in the First Degree (N.Y. Penal L. § 150.20(1)), Reckless Endangerment in the First Degree (N.Y. Penal L. § 120.25), and Criminal Mischief in the Second Degree (N.Y. Penal L. § 145.10) was unconstitutionally obtained. The judgment of conviction of the Erie County Court followed a jury trial before Judge Michael L. D'Amico. Petitioner was subsequently sentenced to aggregate terms of imprisonment, the longest of which was twenty-five years to life.

## II.   Factual Background and Procedural History

### A.   Trial, Verdict, and Sentence

During the early morning hours of June 7, 2003, the Tenth Street home of John Shepherd ("Shepherd") and Linda Mae Spoerle ("Spoerle") on Buffalo's west side was struck with several Molotov cocktails, causing approximately $30,000 in damage. On February 5, 2004, petitioner was charged in a three-count indictment of  Arson

in the First Degree (N.Y. Penal L. § 150.20(1)), Reckless
Endangerment in the First Degree (N.Y. Penal L. § 120.25), and
Criminal Mischief in the Second Degree (N.Y. Penal L. § 145.10).

Prior to trial, Wade and Huntley hearings were conducted,
after which the trial court denied petitioner's suppression motions
with the exception of one statement made by petitioner in June,
2003. See Decision and Order, Supreme Court, Erie County (Rosetti,
A.J.), No. 04074-2003 dated 8/20/2004.

The first witness to testify at petitioner's fourth trial[1] was
Shepherd, who had resided at 48 Tenth Street since 1990. Shepherd
testified that around 3:00am on the morning of June 7, 2003, while
he was at work, he received a frantic phone call from his wife. He
rushed to his home, which was approximately ten blocks from his
business, and saw his house on fire. He ran inside the house to
find his wife in the front vestibule, covered in soot and looking
for their cat. He testified that the house was full of thick, black
smoke. The fire was eventually put out by members of the Buffalo
Fire Department, and the damage was estimated at approximately
$30,000. T. 494, 495, 498, 504.[2]

---

[1] Petitioner's first two jury trials, which occurred on August 26 and
October 19, 2004, resulted in hung juries. The third, on January 11, 2005,
resulted in a mistrial.

[2] Citations to "T.__" refer to pages of the trial transcript dated March
7 through March 10, 2005. Citations to "S.__" refer to the sentencing
transcript dated July 18, 2005.

Shepherd testified that he suspected his next-door neighbor, "Guerro", was involved with the fire because Shepherd had previously reported him to the Drug Enforcement Agency in 2002 for what he thought was "heavy drug activity." Shepherd stated that he often saw people coming and going from Guerro's house at all hours of the day and night; people screaming and banging on Guerro's door loudly at 3:00 and 4:00am. T. 505-06.

Sandra Vega, a neighbor of Shepherd's, testified that she lived at 45 Tenth Street for thirteen years and was friendly with Shepherd and his wife, who lived across the street. Mrs. Vega stated that on June 7, 2003 around 3:00am, she heard a girl yelling outside. When she looked outside, she observed a "red reflection" from the fire, and a "girl and two guys" on the street. According to Mrs. Vega, the girl was "yelling for if [sic] anybody was at home get out and she kept repeating that." She testified that she saw petitioner standing with the girl, and that he walked away from the group toward Carolina Street. T. 522-26.

Mrs. Vega's husband, Francisco Vega, a City of Buffalo fireman, also testified at petitioner's trial. Mr. Vega stated that petitioner did some odd jobs for him during the summer of 2003, and that he knew him from the street. He further testified that he knew petitioner did work for Guerro, Shepherd's neighbor. Mr. Vega stated that on June 6, 2003, he saw petitioner with Guerro, staring at Shepherd's house at 48 Tenth Street, for about fifteen minutes.

On the following morning of June 7, Mr. Vega again saw petitioner talking with Guerro. T. 536, 539-41.

The prosecution's next witness was convicted felon[3] Robert Rodriguez ("Rodriguez"), who worked as a roofer and handyman in the Tenth Street area during June of 2003. According to Rodriguez, at some point in late May or early June petitioner approached him and stated that he received an offer to burn the house at 48 Tenth Street for $500 because the people who lived there were "snitches". A few weeks after the fire, Rodriguez encountered petitioner again on Tenth Street. He recalled that, "I just asking [sic] if he did that. (Indicating) I was pointing like that. I said, you did that? He said yeah, but he [Guerro] still owe me money." T. 545-49.

After the fire, Rodriguez was arrested for felony possession of heroin. The charge was later reduced to a misdemeanor, to which he pleaded guilty. Because his parole was violated as a result of the arrest, Rodriguez was sentenced to 90 days at the Willard Shock Drug Treatment program. Rodriguez testified that the misdemeanor plea offer was not a result of negotiations with the District Attorney's office, and that he was reluctant to testify for the prosecution in petitioner's case because he did not want to "put [his] family in danger." Rodriguez had to be subpoenaed to court, and stated that he felt like he was "pushed" to testify by the

---

[3] Rodriguez testified that he had an extensive criminal record and was on parole for first-degree robbery and manslaughter convictions in New York City, for which he had previously served seventeen years in prison. T. 549.

District Attorney's office. He also stated that at the beginning of the investigation, he had voluntarily provided information regarding the fire. T. 551-54.

Next, Maricelis Dominguez ("Dominguez") who lived a few blocks from the Tenth Street area on Maryland Street, testified that she, her boyfriend Josue Rivera, and a man she knew as "Richard" were standing on the corner of Tenth and Virginia Streets sometime after 2:30am on the morning of June 7, 2003. Shortly before 3:00am, Dominguez heard the sound of windows breaking. The three ran over to see Shepherd's house on fire.  Dominguez then started knocking on the door of the house, telling Spoerle to "come out because her house was on fire." According to Dominguez, Spoerle "looked a little bit confused and was looking for her cat and I told her she had to come out, so she grabbed her phone and she started calling someone." A short time later, petitioner appeared, sweating and out of breath. After the fire trucks arrived, Dominguez testified that petitioner "smoothly walked away."  T. 574-76, 578-79, 581, 594.

Dominguez also recalled seeing petitioner later in the morning, during daylight hours. According to Dominguez, she saw petitioner standing across the street from Shepherd and Spoerle's house with Guerro, and overheard petitioner asking Guerro for money because he "didn't do the job for nothing." Dominguez acknowledged during direct examination that she had been arrested numerous times for prostitution, giving false names, and drugs, and that she used

to buy heroin from Guerro. She also admitted that she used two bags of heroin about three hours before the fire. T. 579, 581, 585.

The prosecution then called Buffalo Fire Department Investigator James O'Neill ("Inv. O'Neill"), who had inspected the Tenth Street home after the fire was extinguished. There, Inv. O'Neill discovered evidence that Molotov cocktails were used to start the fire, which included broken glass bottles, pools of petroleum, and broken bottle necks with cloth material used as a wick protruding out. No discernable fingerprints were recovered, however, DNA present on one of the bottlenecks matched that of petitioner's live-in girlfriend, Veronica Sanchez ("Sanchez"). T. 602-605, 611, 628-29, 642-43, 645, 647.

On January 20, 2004, Inv. O'Neill interviewed petitioner and Sanchez regarding the fire. Petitioner told the investigator that prior to the fire, he was doing work at the home of Francisco and Sandra Vega. Petitioner stated that he and Sanchez went home to their apartment on Whitney Place and Carolina Street, but did not recall when they returned home, or what time he went to bed. Petitioner told Inv. O'Neill that he was in bed, Sanchez woke up, and there were sirens. He never got out of bed, never looked out the window, and did not realize there was a fire until the following day. T. 637-38.

Over defense counsel's objection, Inv. O'Neill was permitted to testify to petitioner's previously suppressed statements from

June, 2003.  Inv. O'Neill stated that when he spoke to petitioner "right after the fire" on June 25,  petitioner told him that he did not remember where he was the night of the fire, that he was staying with his brother at the Perry Projects[4], and had not been on Tenth Street in the months preceding the incident. T. 656-666.

Angel Gonzalez ("Gonzalez") also lived on Tenth Street in June of 2003. Gonzalez testified that he left his house at 24 Tenth Street after he heard fire truck sirens. While outside of his house, he observed petitioner running from the front of 45 Tenth Street toward Carolina Street. A week after the fire, Gonzalez saw petitioner at the Hispanics United church, where petitioner told him that he was paid by Guerro to start the fire. Gonzalez, a convicted drug dealer and drug user, stated that he was not offered anything in exchange for his testimony at trial, despite having a pending B felony drug charge against him.  T. 668-73.

The jury found petitioner guilty as charged. On July 18, 2005, petitioner was sentenced as a second felony offender to an indeterminate prison term of twenty-five years to life on the arson count, concurrent to two indeterminate terms of three and one-half to seven years on the lesser counts. S.9.

**B.   Direct Appeal**

Through counsel, petitioner filed a brief in the Appellate Division, Fourth Department, raising the following points for

---

[4] The "Perry Projects" are located at Perry and Louisiana Streets in Buffalo's First Ward district.

appeal: (1) the trial court abused its discretion in granting the prosecution's mistrial motion, allowing the fourth trial to commence and thereby denying petitioner of his rights to due process, a fair trial, and protection from double jeopardy; (2) the admission into evidence of petitioner's previously suppressed statements denied petitioner his rights to a fair trial, due process, to confront witnesses, and to be free from unreasonable search and seizure; (3) the verdicts were against the weight of the evidence and the evidence was legally insufficient; (4) the evidence in the first two trials was legally insufficient and the fourth trial therefore violated petitioner's right to be free from double jeopardy; (5) petitioner was not properly afforded his rights to due process, a fair trial, and the effective assistance of counsel; and (6) the sentences were unduly harsh and excessive. Pet'r Appellate Br.; Resp't Exhibits ("Ex.") B. The Appellate Division unanimously affirmed the judgment of conviction. People v. Hernandez, 46 A.D.3d 1388 (4th Dept. 2007). Petitioner sought leave to appeal to the New York Court of Appeals on all of the issues presented in his appellate brief, with the exception of (6), the challenge to the duration of his sentence. Ex. C. Leave to Appeal was denied on March 21, 2008. People v. Hernandez, 10 N.Y.3d 811 (2008).

### C.    Post-Conviction Relief

Petitioner then moved pro se in state court to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10, on the ground that his trial counsel was ineffective for failing to preserve certain issues for appellate review. See § 440.10 Mot., No. 04074-2003, dated 6/5/2009 (Ex. D). Specifically, petitioner contends that his trial court was ineffective for failing to preserve the following issues: prosecutorial misconduct on summation; improper polling of the jury; and the improper denial of a missing witness charge. The county court found that because his underlying contentions were meritless, petitioner could not prevail on a claim of ineffective assistance of trial counsel. The motion was denied. See Mem. and Order, Erie County Court (D'Amico, J.), No. 04074-2003, dated 9/25/2009 (Ex. D). According to the petition, petitioner did not seek leave to appeal this determination in the Appellate Division, Fourth Department. See Petition ("Pet.") ¶ 11(c)-(d).

### D.    Federal Habeas Corpus Proceeding

Petitioner then filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court, alleging the following grounds for relief: (1) the trial court abused its discretion in granting the prosecution's mistrial motion, allowing the fourth trial to commence and thereby denying petitioner of his rights to due process, a fair trial, and

protection from double jeopardy; (2) the admission into evidence of petitioner's previously suppressed statements denied petitioner his rights to a fair trial, due process, and to confront witnesses; (3) the evidence was legally insufficient to support the conviction; and (4) denial of the effective assistance of counsel. Pet. ¶ 12(A)-(D) & Attach.

For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.   General Principles Applicable to Federal Habeas Review

#### 1.   Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.   See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

#### 2.   Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not

be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts". Daye v. Att'y General, 696 F.2d 186, 191 (2d Cir.1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**B.   The § 2254 Petition**

**1.   Double Jeopardy Violation**

Petitioner first contends that because the trial court granted the prosecution's motion for a mistrial during his third jury trial, the fourth trial should have been barred by the double jeopardy clause. Pet. ¶ 12(A). On appeal, the Fourth Department rejected petitioner's contention:

> Defendant's first two trials ended in mistrials because of hung juries and, during his opening statement at defendant's third trial, defense counsel stated that he was confident that the jury would not convict defendant "much like the previous two juries." County Court thereupon granted the People's motion for a third mistrial. Defendant contends that his fourth trial was barred by double jeopardy because there was not the requisite "'manifest necessity'" for the third mistrial. We reject that contention. Here, defense counsel's comments to the jury amounted to "gross misconduct . . . resulting in substantial and irreparable prejudice to

> the [P]eople's case," and thus defendant's
> retrial was not barred by double jeopardy.

People v. Hernandez, 46 A.D.3d 1388, 1389 (4th Dept.2007) (quoting People v Michael, 48 N.Y.2d 1, 9 (1979), (in turn quoting United States v Perez, 22 U.S. 579, 580 (1824)); N.Y. Crim. Proc. L. § 280.10).

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause applies to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 787 (1969). The Double Jeopardy Clause does not bar retrial when a mistrial is declared due to a "manifest necessity." Arizona v. Washington, 434 U.S. 497, 505 (1978). "Manifest necessity," however, is not to be interpreted literally rather, a judge may order a mistrial when there is a "high degree" of necessity. Id. at 506. The "classic basis" for a mistrial due to a "manifest necessity" exists when a jury declares that it is unable to reach a verdict. Id. at 509. A "trial judge's decision to declare a mistrial when he considers the jury deadlocked is ... accorded great deference by a reviewing court," since the trial judge is "in the best position to assess all the factors which must be considered" in determining whether the jury will be able to reach a verdict following further deliberations. Id. at 510, 510 n.28.

The Supreme Court recently outlined a federal habeas court's role in evaluating challenges to an order granting a mistrial:

> [The] question is not whether the trial judge
> should have declared a mistrial. It is not
> even whether it was an abuse of discretion for
> her to have done so ... The question under
> AEDPA is instead whether the determination of
> the [state court] that there was no abuse of
> discretion was "an unreasonable application of
> ... clearly established Federal law."

Renico v. Lett, — U.S. ---- , ----, 130 S.Ct. 1855, 1862 (2010)
(quoting § 2254(d)(1)). The application of federal law must be
"objectively unreasonable," not just incorrect; state court
decisions are treated with high deference and are "'given the
benefit of the doubt.'" Id. at 1862 (quoting Woodford v. Visciotti,
537 U.S. 19, 24 (2002) (per curiam)). Additionally, a trial judge
is not required "to make explicit findings of 'manifest necessity'"
or to state all the factors behind his or her decision.  Id. at
1864.

The record reflects that at the conclusion of defense
counsel's opening statement at petitioner's third trial, the
following exchange occurred:

| | |
|---|---|
| Defense Counsel: | You've all taken an oath. You've all indicated to me and [the prosecutor] that you will do your duties as jurors and I'm confident that at the conclusion of this trial, much like the previous two juries, that you will not convict Mr. Hernandez. |
| The Court: | Mr. Brennan. |
| Prosecutor: | Objection, Judge. |
| The Court: | Mr. Brennan, you know that's not - - that's improper. Ladies and |

> gentlemen, you are not to speculate
> as to what happened in those prior
> trials. Mr. Brennan, you are
> admonished and I don't want you to
> say it again. Call your first
> witness.

Transcript dated 1/10 & 1/11/2005 at 43.

Subsequently, the prosecution made a motion for a mistrial on the basis that counsel's comment suggested two prior acquittals, and the jury was therefore tainted. Over defense counsel's objection, the trial court granted the prosecution's motion, stating:

> Based on his comment that was made by defense
> counsel, which was gross misconduct . . . and
> there may be possibility [sic] of sanctions .
> . . I am going to grant the people's request
> of a mistrial in this case. Regrettably, I'm
> going to grant it. I'm recusing myself as well
> from this case.

Id. at 44-45.

The case was then assigned to another judge, and prior to the fourth trial, petitioner brought a motion to dismiss the indictment on double jeopardy grounds. The trial court denied that motion stating that it was not properly before it, and, even if it were, it would be denied on the merits. T. 20.

This Court finds that the Appellate Division did not unreasonably apply Federal law in rejecting petitioner's double jeopardy claim. It is well-settled that an improper opening statement may risk that the entire panel may be tainted. Arizona v. Washington, 434 U.S. at 512. "The trial judge, of course, may

instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial . . . ." <u>Id.</u> at 512-13. "Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases." <u>Id.</u> at 512-13. Such is the situation presented by petitioner's case.

Here, counsel's comments potentially implied that twenty-four prior jurors in two previous trials voted not to convict petitioner, and involved facts that were outside the scope of the trial evidence that were not pertinent for the jury's consideration. There were no alternate jurors, and it is unlikely that the judge's initial admonition would have cured the remark. Indeed, the trial judge found counsel's argument so egregious that he suggested the possibility of sanctions. <u>See</u> Transcript dated 1/10 & 1/11/2005 at 44. The trial court's decision to determine the prejudicial impact of an improper opening statement is therefore entitled to deference. Moreover, although petitioner urges that the trial court erred in failing to make a finding of "manifest necessity" on the record, the Supreme has explicitly rejected this argument in <u>Arizona v. Washington</u>. 434 U.S. at 516-17. <u>Accord</u>, <u>Renico v. Lett</u>, 130 S.Ct. at 1864.

Because petitioner has failed to establish that the Appellate Division's determination was an unreasonable application of Supreme Court law, his double jeopardy claim must be dismissed.

## 2.   Admission of Suppressed Statements

The second ground of the petition states, "the admission of previously suppressed statements violated petitioner's due process, Fourth Amendment, and confrontation rights." Pet. ¶ 12(B). On this point, the Appellate Division held, "the [trial] court did not abuse its discretion by allowing the People to question a police officer on redirect examination with respect to defendant's suppressed statement because defendant, while cross-examining the officer, 'opened the door' to the introduction of that statement." Hernandez, 46 A.D.3d at 1389 (citing People v Melendez, 55 N.Y.2d 445, 451-452 (1982)).[5]

### a.   Exhaustion

The respondent has raised the defense of non-exhaustion on the basis that petitioner failed to include this claim in his application for leave to appeal to the New York Court of Appeals. Resp't Mem. 15. As stated earlier, the exhaustion requirement provides that "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his

---

[5] On direct appeal, petitioner argued that the trial court's evidentiary ruling that the defense "opened the door" to the suppressed statements was reversible error. See Pet'r Appellate Br. at 14-19 (Ex. B).

petition for habeas corpus." <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971). To satisfy this requirement, a petitioner must fairly inform the highest state court in the applicable state of both the factual and legal bases for his federal constitutional claims prior to seeking federal habeas relief. <u>See</u> <u>Grey v. Hoke</u>, 933 F.3d 117, 119 (2d Cir.1991); <u>Daye v. Att'y General</u>, 696 F.2d 186, 191 (2d Cir.1982) (<u>en banc</u>), <u>cert. denied</u>, 464 U.S. 1048 (1984); <u>Morales v. Miller</u>, 41 F.Supp.2d 364, 374 (E.D.N.Y.1999).

Under former New York Court Rules § 500.10(a)[6], an application for leave to appeal to the New York Court of Appeals may be made in letter form accompanied by the briefs filed below. The application "should identify the issues on which the application is based" with "particular written attention" to "identifying problems of reviewability and preservation of error." <u>Id.</u> The Second Circuit interpreted that requirement to mean that a petitioner must explicitly present each of his federal claims in the application letter seeking leave to appeal. <u>Grey</u>, 933 F.2d at 120. In <u>Grey</u>, a habeas petitioner argued one claim in his leave letter to the New York Court of Appeals and attached his Appellate Division briefs, which raised that issue plus two others. <u>Id.</u> The Second Circuit held that the claims referred to only in his attached brief were unexhausted:

_____

[6] The rules have since been amended to read that applications for appeal in a criminal case "shall be by letter" and "shall indicate . . . the grounds upon which leave to appeal is sought." N.Y. Court R. § 500.20.

> The fair import of petitioner's submission to
> the Court of Appeals, consisting of his brief
> to the Appellate Division that raised three
> claims and a letter to the Court of Appeals
> arguing only one of them, was that the other
> two had been abandoned. The only possible
> indication that the other two claims were
> being pressed was the inclusion of a lengthy
> brief originally submitted to another court.
> This did not fairly apprise the court of the
> two claims. We decline to presume that the New
> York Court of Appeals has a duty to look for a
> needle in a paper haystack.

Id. (quotation and citation omitted).

The Second Circuit subsequently held in Jordan v. Lefevre, 206 F.3d 196, 198 (2d Cir.2000), where a petitioner arguing one claim at length in his application for leave to appeal, and makes only "passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims," and is therefore insufficient for exhaustion purposes.

Although respondent does not cite to any case law, the Court believes that he intends invoke Grey and Jordan in support of his contention that petitioner's evidentiary claim is unexhausted because, according to respondent, petitioner "did not include" the claim in his application for leave to appeal to the New York Court of Appeals. The Court disagrees.

The state court records in this case that were provided by respondent include the leave letter to the New York Court of Appeals. Therein, petitioner sought leave to appeal "based on every

issue raised in his two briefs with the Appellate Division," incorporating five detailed point-headings that contained the issues raised on appeal and citing the applicable federal, constitutional law. The Court finds this sufficient to exhaust petitioner's constitutional claims. While petitioner did argue his double jeopardy claim over five pages and emphasized that it was of "particular importance," petitioner's case is unlike Jordan and Grey in that petitioner specifically alerted the state's highest court to each constitutional claim for which he sought review, rather than merely making passing reference to the remaining claims in his appellate brief. See Jordan, 206 F.3d at 198-99 ("We conclude . . . that arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction."); Ramirez v. Att'y General of N.Y., 280 F.3d 87, 97 (2d Cir.2001) ("References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal). As such, the Court shall proceed to examine the merits of petitioner's evidentiary claim.

### b.   Merits

As a general rule, "habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991)

(citations omitted). Thus, a petitioner seeking habeas relief based upon an error of state evidentiary law must also allege that the state evidentiary error violated an identifiable federal constitutional right, "which necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system." King v. Greiner, No. 02Civ.5810(DLC)(AJP), 2008 WL 4410109, at *38 (S.D.N.Y. Sept. 26, 2008) (citations and footnote omitted). "The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." Id. (citing Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, 9 (S.D.N.Y. Oct. 17, 2000)) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); Jones v. Stinson, 94 F.Supp.2d 370, 391-92 (E.D.N.Y.2000) (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis).

Under New York law, "[t]he extent of redirect examination is, for the most part, governed by the sound discretion of the trial court." People v. Melendez, 55 N.Y.2d 445, 451 (1982). "Where, however, the opposing party 'opens the door' on cross-examination to matters not touched upon during the direct examination, a party has the right on redirect 'to explain, clarify and fully elicit

[the] question only partially examined' on cross-examination." <u>Id.</u> (quoting <u>People v. Regina</u>, 19 N.Y.2d 65, 78 (1966)).

As stated earlier, petitioner's June 25, 2003 statement to Inv. O'Neill regarding his whereabouts the night of the fire[7] was suppressed as the fruit of an illegal arrest following pre-trial <u>Huntley</u> and <u>Wade</u> hearings. <u>See</u> Point II.A. In his cross-examination of Inv. O'Neill, counsel raised questions regarding the June 25, 2003 interview:

| Defense Counsel: | [Referring to the January, 2004 interview] Okay, but that's not the first time you talked to [petitioner and Sanchez]? |
|---|---|
| Witness: | No. |
| Defense Counsel: | He had come down to your office previously? |
| Witness: | Yes, he did . . . I believe twice. |
| Defense Counsel: | Okay, a couple of times previously? |
| Witness: | I believe previously and once the day, the 20th. |
| Defense Counsel: | Okay, now in both instances, you told him he was a suspect in the arson? |
| Witness: | I don't know if I did the first time. First time was questioning to see what he knew. |

_____

[7] To reiterate, in June, 2003, petitioner told Inv. O'Neill that he did not remember where he was on the night of the fire, and that he was living with his brother in the "Perry Projects." T. 664. That statement was suppressed following pre-trial hearings. On January 20, 2004, petitioner told Inv. O'Neill that he was with his girlfriend, with whom he was living, on the night of June 7, 2003. <u>Id.</u>

| Defense Counsel: | Okay, but clearly he was brought to your office to be questioned? |
|---|---|
| Witness: | Yes, he was. |
| Defense Counsel: | Okay, about a fire? |
| Witness: | Yes, he was. |
| Defense Counsel: | And asked about his involvement in any in that fire? |
| Witness: | Yes. |

T. 650-52.

Counsel purposefully initiated this line of questioning and opened the door by bringing out facts on cross-examination regarding the suppressed statement. Redirect examination on the suppressed statement was therefore reasonably necessary to address the repeated asking of the investigator if petitioner knew he was a suspect and how many times petitioner had come to speak with him. In doing so, defense counsel sought to establish that petitioner was repeatedly cooperative with the investigation, and, after being advised of the severity of the situation, voluntarily spoke with investigators six months after the incident. T. 666. Accordingly, the trial court used proper discretion in ruling that the prosecution had a right on redirect to negate that inference by having the investigator explain to the jury the relevant circumstances surrounding petitioner's first meeting with Inv. O'Neill. Based on the record presented in this case, the trial court did not err in finding that petitioner's counsel had "opened

the door" to allowing the testimony in question. Accordingly, the Court cannot conclude there was an error of state law or an error of Federal constitutional magnitude warranting habeas relief.

### 3.    Sufficiency and Weight of the Evidence

Petitioner next avers that the evidence presented at trial was legally insufficient to support his conviction and that the verdict was against the weight of the evidence.  Pet. ¶ 12(C) & Attach. The Appellate Division rejected petitioner's contention on the merits. Hernandez, 46 A.D.3d at 1389.

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Comm'r of Corr. Services, 235 F.3d 804, 813 (2d Cir.2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). Under the Jackson standard for reviewing evidentiary sufficiency, "the assessment of the credibility of witnesses is generally beyond the

scope of review." <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995); <u>accord</u> <u>Maldonado v. Scully</u>, 86 F.3d 32, 35 (2d Cir.1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."). The court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." <u>United States v. Carson</u>, 702 F.2d 351, 361 (2d Cir.1983) (internal citations omitted), <u>cert. denied sub nom. Mont v. United States</u>, 462 U.S. 1108 (1983). A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. <u>Quartararo v. Hanslmaier</u>, 186 F.3d 91, 97 (2d Cir.1999) (citation omitted), <u>cert. denied</u>, 528 U.S. 1170 (2000).

The present record shows that the home of John Shepherd and Mae Spoerle was damaged by fire caused by Molotov cocktails, causing approximately $30,000 in damage; Spoerle was inside the home sleeping at the time the Molotov cocktails were thrown into the house; prior to the fire, Shepherd had reported their neighbor "Guerro" to authorities for drug dealing; Mrs. Vega, Dominguez, and Gonzalez saw petitioner near 48 Tenth Street during the fire; petitioner admitted to burning the house at Guerro's request to

both Rodriguez and Gonzalez; and the DNA of petitioner's live-in girlfriend, Veronica Sanchez, was recovered from one of the Molotov cocktail bottles recovered by fire investigators. Accordingly, a rational trier of fact could find that petitioner was guilty of the crimes of  of Arson in the First Degree, Reckless Endangerment in the First Degree, and Criminal Mischief in the Second Degree, see Point I, n.1-3, and the Appellate Division's determination therefore did not run afoul of Jackson v. Virginia.

To the extent that petitioner challenges the weight of the evidence on the basis that the prosecution's witnesses[8] were not credible, such a claim is not a cognizable issue on habeas review. A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury. See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues) (citing United States v. Rosa, 11 F.3d 315, 337 (2d Cir.1993), cert. denied, 114 S.Ct. 1565 (1994); United States v. Parker, 903 F.2d 91, 97 (2d Cir.), cert. denied, 498 U.S. 872 (1990)). Here, petitioner is parroting the

---

[8] Petitioner describes three of the witnesses as a "scary cast of characters," which included a "drug dealer" (Gonzalez), a "drug using killer" (Rodriguez), and a "drug using prostitute" (Dominguez). Pet. Attach (6)A.

arguments attacking the witnesses' credibility his trial counsel already made to the jury as trier-of-fact, who was in the best position to observe the witnesses' demeanor and assess their veracity. It is beyond dispute that a reviewing court must defer to the trier-of-fact's assessments of witness credibility. E.g., United States v. Vasquez, 267 F.3d 79 (2d Cir.2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility.") (citing United States v. Payton, 159 F.3d 49, 56 (2d Cir.1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility ....").

For the foregoing reasons, petitioner's weight- and sufficiency-of-the-evidence claims must be dismissed.

### 4. Ineffective Assistance of Counsel

Petitioner, as he did in his state § 440.10 motion to vacate, alleges that he received constitutionally ineffective assistance of trial counsel because his attorney failed to preserve certain issues for appellate review. Pet. ¶ 12(D) & Attach.; see § 440.10 Mot., No. 04074-2003, dated 6/5/2009 (Ex. D). The state court rejected petitioner's claims on the merits. See Mem. and Order, Erie County Court (D'Amico, J.), No. 04074-2003, dated 9/25/2009 (Ex. D). He did not, however, did not seek leave to appeal the state court's denial of the § 440.10 motion, rendering petitioner's ineffective assistance of counsel claim unexhausted. See Pesina v.

Johnson, 913 F.2d 53 (2d Cir.1990) ("[f]ailure to seek leave to appeal the denial of a § 440.10 motion to the Appellate Division constitutes failure to exhaust the claims raised in that motion.").

Notwithstanding petitioner's failure to fully exhaust his Sixth Amendment claims, a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

The standard of review federal district courts are to consider when reviewing unexhausted claims is not settled in this Circuit. Severino v. Phillips, No. 05 Civ. 475, 2008 WL 4067421, at *14 (S.D.N.Y. Aug. 25, 2008). Most courts in this Circuit which have addressed this issue have opined that unexhausted claims are to be dismissed when the court finds them to be "patently frivolous." Severino, 2008 WL 4067421, at *14 (citing Brown v. State of New York, 374 F.Supp.2d 314, 318 (W.D.N.Y.2005)) (other citation omitted). A minority of district courts, however, have concluded that the dismissal of such claims is warranted when the court determines that "it is perfectly clear that the petitioner does not raise even a colorable federal claim." Severino, 2008 WL 4067421, at *14 (internal quotations and citations omitted). Petitioner's

claims are subject to dismissal regardless of the standard utilized.

Under Strickland v. Washington, 466 U.S. 668, 687 (1984), to demonstrate ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. 466 U.S. at 687. The Supreme Court has explained that a habeas petitioner must not only show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, but that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. Woodford, 537 U.S. at 22-23.

Petitioner first complains that his attorney should have objected to the prosecutor's remarks on summation, specifically those he considered to be "vouching for the testimony" of one of the prosecution witnesses, Maricelis Dominguez. A review of the transcript indicates that the prosecutor, in arguing why the jury should find Dominguez credible, was responding to defense counsel's prior comments that there was "difficulty" with Dominguez's credibility after hearing her testimony that she had a history of prostitution, drug use, and criminal impersonation. T. 747. The prosecutor's comments on Dominguez's credibility, therefore, was

not improper vouching. See Faison v. McKinney, No. 07 Civ. 8561(JGK), 2009 WL 4729931, at *9 (S.D.N.Y. Dec. 10, 2009) ("The prosecutor's statements must be viewed in light of the fact that the comments were made in response to defense counsel's summation, which called the Government's witnesses liars."); Campbell v. Fischer, 275 F.Supp.2d 321, 327 (E.D.N.Y.2003) (alleged vouching by prosecution, made in direct response to defense counsel's argument on summation that a witness was lying, was fair comment on the evidence). Because it is unlikely that a claim of prosecutorial misconduct would have succeeded on appeal, it cannot be said that counsel's failure to object constituted deficient performance or prejudiced the petitioner. See, e.g., Quail v. Farrell, 550 F.Supp.2d 470, 476 (S.D.N.Y.2008) ("[t]he failure to preserve a meritless claim cannot constitute ineffective assistance of counsel").

Likewise, petitioner's underlying claim that the trial court erred in denying his missing witness charge[9] is without merit. At trial, counsel requested missing witness charges as to Josue Rivera and Mae Spoerle. The court denied petitioner's request on the basis that the testimony would have been cumulative. Spoerle, who was asleep at the time of the fire, would have only been able to

---

[9] To warrant a missing witness charge under New York law, the party requesting the charge must show that (1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, (2) the witness would naturally be expected to provide non-cumulative testimony favorable to the party who has not called him, and (3) the witness is available to such party. People v. Gonzalez, 68 N.Y.2d 424, 427 (1986).

testify as to being in the house during the fire. Similarly, Josue Rivera, who gave a statement to Inv. O'Neill after the fire, only stated that he saw petitioner at the scene, as did three other witnesses. The defense was therefore not entitled to the missing witness charge under state law because the testimony would have clearly been cumulative. Because petitioner's claim that the trial court should have given a missing witness charge is without merit, his attorney cannot be faulted for failing to preserve that issue for appellate review. See Quail, supra.

Finally, petitioner's allegation that his attorney was ineffective for failing to object to the improper polling of the jury is patently frivolous. The jury in this case was individually polled, and each juror was asked by name whether the verdict announced by the foreperson was his or hers. However, due to an apparent clerical error in the stenographic minutes, the transcript indicates that each individual juror's response belonged to "The Foreperson." T. 814-817. Counsel had no basis to object to the procedure.

Accordingly, petitioner's claims of ineffective assistance of counsel are dismissed as patently frivolous and for failing to raise a colorable federal claim.

## IV.  Conclusion

For the reasons stated above, Jimmy Hernandez's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and

the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir.2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

       **SO ORDERED**.

                                 S/Michael A. Telesca

                                 MICHAEL A. TELESCA
                            United States District Judge

Dated:      June 28, 2011
             Rochester, New York